2011R01375

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 12-CR-389(CCC) |
| v. | : | |
| | : | 42 U.S.C. § 1320a-7b(b)(1) and |
| DAISY DEGUZMAN | : | 18 U.S.C. § 2 |

<u>I N F O R M A T I O N</u>

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

<u>The Defendant and Orange Community MRI, LLC</u>

1. At all times relevant to this Information:

    a. Defendant DAISY DEGUZMAN was a physician licensed to practice in New Jersey who operated an office at 500 Orange Street in Newark, New Jersey.

    b. Orange Community MRI, LLC ("Orange MRI") was located at 345 Henry Street, Suite 102, Orange, New Jersey. Orange MRI provided services to patients that included magnetic resonance imaging ("MRIs"), ultrasound imaging ("Ultrasounds"), echocardiograms ("Echos"), computed axial tomographies ("CAT Scans" or "CT Scans"), and dual-emission X-ray absorptiometries ("DEXA Scans") (collectively, the "Diagnostic Tests").

2. At various times relevant to this Information, there was a Cooperating Witness (the "CW") who held himself out to be an individual acting on behalf of Orange MRI.

3. Starting from in or about late September 2011 to

in or about December 2011, the CW held himself out to be an individual acting on behalf of Orange MRI, although he was doing so at the direction and under the supervision of law enforcement agents with the U.S. Department of Health and Human Services, Office of Inspector General.

   4. The Medicare Program ("Medicare") is a federal program that provides free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare is a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

   5. The Medicare Part B program is a federally funded supplemental insurance program that provides supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program pays for various medical services for beneficiaries, including the Diagnostic Tests.

   6. The Medicaid Program ("Medicaid") is a jointly funded, federal-state health insurance program that provides certain health benefits to the disabled, as well as individuals and families with low incomes and resources. The federal involvement in Medicaid is largely limited to providing matching funds and ensuring that states comply with minimum standards in

the administration of the program. Medicaid is a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f). Individuals who receive benefits under Medicaid are commonly referred to as "beneficiaries."

7. The federal Medicaid statute sets forth the minimum requirements for state Medicaid programs to qualify for federal funding, which is called federal financial participation. 42 U.S.C. §§ 1396 et seq. In New Jersey, the New Jersey Medical Assistance Program is administered by the New Jersey Department of Human Services. Under New Jersey law, Medicaid pays for certain medical services for beneficiaries, including the Diagnostic Tests.

8. At all times relevant to this Information, Orange MRI was an approved Medicare and Medicaid provider of, among other things, the Diagnostic Tests.

The Kickback Scheme

9. Starting at least in or about 2010, individuals acting on behalf of Orange MRI made cash payments to certain New Jersey health care practitioners, including DEGUZMAN, in exchange for referring patients to Orange MRI for Diagnostic Tests.

10. After the end of each calendar month, individuals acting on behalf of Orange MRI, including the CW, printed Orange MRI patient reports that included, among other information, dates of service, patient names, the referring health care

3

practitioners, the kinds of medical insurance to be billed, and the Diagnostic Tests performed (the "Kickback Reports"). The Kickback Reports were organized by Diagnostic Test, and therefore there was a separate Kickback Report for MRIs, Ultrasounds, Echos, CAT Scans, and DEXA scans. The Kickback Reports were then used to tally the number of Orange MRI-patient Diagnostic Tests referred by each health care practitioner and the type of insurance used. The results of these tallies were used to determine the amount of the kickback payment Orange MRI paid to the health care provider.

    11. Pursuant to DEGUZMAN and Orange MRI's agreement, Orange MRI paid DEGUZMAN for each Medicare or Medicaid beneficiary MRI or CAT Scan DEGUZMAN referred to Orange MRI. Pursuant to the same agreement, Orange MRI also paid DEGUZMAN for certain privately insured patient MRIs or CAT Scans that DEGUZMAN referred to Orange MRI. In the event a patient referred to Orange MRI paid for an MRI or CAT Scan directly and not through Medicare, Medicaid, or an insurance plan (i.e., the patient "self-paid" for the MRI), then DEGUZMAN did not receive any payment from Orange MRI.

    12. According to the MRI Kickback Report, during September 2011, DEGUZMAN referred a total of 19 MRIs to Orange MRI; 16 of those 19 MRIs were for Medicare or Medicaid beneficiaries. According to the CAT Scan Kickback Report, during

September 2011, DEGUZMAN referred a total of 7 CAT Scans to Orange MRI; all 7 of those tests were for Medicare or Medicaid beneficiaries.

13. On or about October 11, 2011, DEGUZMAN met with the CW at DEGUZMAN's office located at 500 Orange Street in Newark, New Jersey. During this meeting, DEGUZMAN accepted from the CW a white envelope containing approximately $1,700 in cash, which included payments for the 16 MRIs referred to Orange MRI and performed on Medicare or Medicaid beneficiaries, as well as the 7 CAT Scans referred to Orange MRI and performed on Medicare or Medicaid beneficiaries during September 2011.

14. According to the MRI Kickback Report, during October 2011, DEGUZMAN referred a total of 13 MRIs to Orange MRI; 12 of those 13 MRIs were for Medicare or Medicaid beneficiaries. According to the CAT Scan Kickback Report, during October 2011, DEGUZMAN referred a total of 4 CAT Scans to Orange MRI; 3 of those 4 tests were for Medicare or Medicaid beneficiaries.

15. On or about November 17, 2011, DEGUZMAN met with the CW at DEGUZMAN's office located at 500 Orange Street in Newark, New Jersey. During this meeting, DEGUZMAN accepted from the CW a white envelope containing approximately $1,130 in cash, which included payments for the 12 MRIs referred to Orange MRI and performed on Medicare or Medicaid beneficiaries, as well as

5

the 3 CAT Scans referred to Orange MRI and performed on Medicare or Medicaid beneficiaries during October 2011.

16. During this November 17, 2011 meeting, DEGUZMAN and the CW discussed the number of MRIs and CAT Scans that DEGUZMAN had referred and for which DEGUZMAN was being paid. DEGUZMAN then denied to the CW that DEGUZMAN sent patients to an Orange MRI competitor and, referring to documentation left at her office by that Orange MRI competitor, DEGUZMAN stated that "I don't know why they [referring to the Orange MRI competitor] gave me that, I never send patients."

17. According to the MRI Kickback Report, during November 2011, DEGUZMAN referred a total of 20 MRIs to Orange MRI; at least 17 of those 20 MRIs were for Medicare or Medicaid beneficiaries. According to the CAT Scan Kickback Report, during November 2011, DEGUZMAN referred a total of 3 CAT Scans to Orange MRI; all 3 of those tests were for Medicare or Medicaid beneficiaries.

18. On or about December 6, 2011, DEGUZMAN met with the CW at DEGUZMAN's office located at 500 Orange Street in Newark, New Jersey. During this meeting, DEGUZMAN accepted from the CW a white envelope containing approximately $1,000 in cash, which included payments for the 17 MRIs referred to Orange MRI and performed on Medicare or Medicaid beneficiaries, as well as

the 3 CAT Scans referred to Orange MRI and performed on Medicare or Medicaid beneficiaries during November 2011.

19. During this December 6, 2011 meeting, DEGUZMAN said "[n]o problem" after the CW advised her, in sum and substance, that although DEGUZMAN was owed $1,600 in kickbacks, the CW only had $1,000 to give to DEGUZMAN at the time. DEGUZMAN then counted the $1,000 that had been handed to her by the CW.

20. From at least in or about 2010 through at least in or about November 2011, in the District of New Jersey, and elsewhere, defendant

**DAISY DEGUZMAN**

did knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks, from Orange Community MRI in return for referring patients to Orange Community MRI for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program.

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

1. The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2. Upon conviction of the offenses in violation of Title 42, United States Code, Section 1320a-7b(b), the defendant, DAISY DEGUZMAN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all right, title, and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses of conviction, including but not limited to a sum of money equal to at least $23,595 in United States currency.

3. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty, the United States shall be

entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(7), to forfeiture of any other property of the defendant, DAISY DEGUZMAN, up to the value of the property described in the preceding paragraph.

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 12-CR-389(CCC)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

DAISY DEGUZMAN

## INFORMATION

42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2

**PAUL J. FISHMAN**
U.S. ATTORNEY
NEWARK, NEW JERSEY

JOSEPH MACK
ASSISTANT U.S. ATTORNEY
(973) 645-2824

USA-48AD 8
(Ed. 1/97)